RECEIVED

JAN 2 7 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

BROADY MANUEL                                    CIVIL ACTION NO. 10-1381

VERSUS                                           JUDGE DOHERTY

BASIC MARINE SERVICES, INC., ET AL.              MAGISTRATE JUDGE HANNA

### MEMORANDUM RULING

Pending before the Court is the Motion for Partial Summary Judgment [Doc. 21] filed by

defendants Basic Marine Services, Inc. and Basic Energy Services, L.P. ("Basic Marine"). In its

motion, Basic moves for "judgment in favor of defendants and against plaintiff, Broady L. Manuel,

as there exists no genuine issue as to any material facts and Basic Energy and Basic Marine are

therefore entitled to a partial summary judgment as a matter of law, dismissing any and all claims

for punitive damages, compensatory damages, and attorney's fees being asserted by the plaintiff

herein in connection with the handling of the plaintiff's cure and/or medical treatment by the

employer." Plaintiff Broady Manuel opposes the motion [Doc. 32], and Basic has filed a Motion for

Leave to File Reply to Plaintiff's Opposition to Motion for Partial Summary Judgment [Doc. 33],

which is opposed by the plaintiff, with no reason stated, but is nevertheless GRANTED.

For the following reasons, the Motion for Partial Summary Judgment is DENIED.

## I.    Factual and Procedural Background

The instant lawsuit arises out of injuries allegedly sustained by the plaintiff, a driller on Basic

Marine Rig 15, an inland workover barge which was located in Lake Washington near Port Sulphur,

Louisiana in Plaquemines Parish. Plaintiff alleges on May 7, 2008, he was walking on the drill floor

on the upper deck of the rig in the area of the BOP accumulators when he slipped and fell in a substance on the deck. Plaintiff's accident was admittedly unwitnessed, however, plaintiff alleges he immediately notified a floorhand. The following day, an accident report was prepared and the Basic Marine safety coordinator, Larry Leblanc, drove plaintiff to the office of Dr. Robert Davis at the Occupational Medicine Clinic in Houma, Louisiana for an evaluation and treatment.

It is undisputed the plaintiff was examined by Dr. Davis and x-rays were obtained, after which Dr. Davis diagnosed the plaintiff with a lumbar strain with left-sided sciatica.[1] Dr. Davis prescribed Prednisone, an anti-inflammatory, and Ultram, a pain reliever.[2] He also recommended warm compresses. Dr. Davis released the plaintiff to "duty as tolerated" with the instruction that the employer should "take it slow and easy with them [sic], just kind of let him go at his own pace." Dr. Davis recommended a return visit three days later if there was no improvement.[3]

It appears from the record Mr. Leblanc accompanied the plaintiff into the examination room at Dr. Davis's office, however, there is uncertainty regarding how this occurred. The plaintiff argues he cannot recall Dr. Davis obtaining verbal authorization from him to allow Mr. Leblanc to accompany the plaintiff into the examination room. However, Dr. Davis testified it is his standard practice to obtain the consent of the patient before allowing anyone to accompany the patient into the examination room.[4] Additionally, Mr. Leblanc testified he always asks the employee himself if

---

[1] *See* Deposition of Dr. Davis, attached as Exhibit "D" to defendants' motion for partial summary judgment, Doc. 21, at p. 19.

[2] *Id.*

[3] *Id.* at p. 20.

[4] *Id.* at 20-21.

he can accompany the employee into the examination room.  Mr. Leblanc testified he asked Mr. Manuel if he could accompany him into the examination room in this case, and he did so in this case.[5]

With respect to the actual claim of interference, plaintiff alleges Dr. Davis "wanted" to prescribe pain medicine, but "the safety man" told Dr. Davis not to give plaintiff anything for pain because "if he takes something for pain, he can't go back to the rig, and that's going to be a loss time accident."[6]  With respect to the issue of pain medication, Dr. Davis testified as follows:

> Q:   Did Mr. Leblanc, who accompanied Mr. Manuel to the examination, ever make any suggestion to you concerning the type of pain medication you wanted to prescribe, in any way attempt to influence that in order to able to return Mr. Manuel to the rig?
>
> A:   Well, I gave him Ultram.  Ultram is a schedule two drug.  It is in the same schedule as an opiate.  I am giving him a very strong pain reliever, so I don't know.  I certainly – he didn't influence me.  I gave the man a very good pain reliever.  What more could I have done?[7]

Plaintiff argues he does not know whether Mr. Leblanc filled the prescription for Ultram.  However, plaintiff argues it was Mr. Leblanc who filled the prescriptions, and Mr. Leblanc gave him only a prescription for a muscle relaxer, along with some Aleve and heating pads.  No party has cited this Court to any testimony of Mr. Leblanc regarding this specific allegation.

Plaintiff, also, argues Mr. Leblanc pressured Dr. Davis to release the plaintiff to "duty as tolerated."  With respect to the foregoing, Dr. Davis testified:

---

[5] *See* Deposition of Larry Leblanc, attached as Exhibit "C" to defendants' motion for partial summary judgment, Doc. 21, at pp. 58-59.

[6] *See* Deposition of Broady Manuel, attached as Exhibit "B" to defendants' motion for partial summary judgment, Doc. 21, at p. 158.

[7] Deposition of Dr. Davis at pp. 31-32.

Q:      Did Mr. Leblanc in the case of Mr. Manuel – did he make any request to you concerning the type of return to work status he wanted you to give Mr. Manuel?

A:      Not to my recollection. Even if that person did, it is my decision. I am going to take care of the patient and do what is right for him and protect his interest. I don't have any recollection of that being any part of the discussion.[8]

Dr. Davis further testified the treatment prescribed for the plaintiff in this case was an appropriate treatment for the injury and clinical presentation.[9]

Mr. Leblanc testified he has never, while working for any employer including Basic Marine, instructed or requested a doctor to treat a patient differently in order to return the patient back to work, and he unequivocally testified he did not attempt to influence how Dr. Davis treated the plaintiff in this instance. With respect to the issue of medication, Mr. Leblanc testified:

Q:      Do you recall telling the doctor that Mr. Manuel can't work on the rig with pain medication, that it would be a lost time accident?

A:      I don't think I would have said that, no.

Q:      So you deny saying that?

A:      That is correct.[10]

[ . . . ]

Q:      Have you ever asked a doctor not to prescribe pain medication so the person would not have a lost time accident?

A:      No, sir.

Q:      So you deny having any such discussion with Dr. Davis with respect to Mr.

---

[8] *Id.* at p. 29.

[9] *Id.* at. pp. 30-31.

[10] Deposition of Mr. Landry at p. 62.

Manuel; is that correct?

A:     That's correct.  I don't think Dr. Davis would change his prescription on my say-so, even if I would have asked.

Q:     Have you ever had that kind of a discussion with Davis before?

A:     No, sir.[11]

[. . .]

Q:     If Mr. Manuel has suggested in this case that you attempted to influence the medicine that Dr. Davis prescribed in the course of his initial treatment of Mr. Manuel in order to return him to the rig such that it would a no lost time accident, that would be untrue, correct?

A:     I disagree with that, yes.  If that's what he said, I disagree.  Our goal was to keep it non-lost time, but if it was, it was what it was.[12]

Despite releasing the plaintiff to "duty as tolerated," the plaintiff argues Dr. Davis told Mr. Leblanc to put the plaintiff on light duty tasks.  In his opposition to the defendants' motion, the plaintiff argues "[i]t is difficult to reconcile an express 'regular duty' release by a physician quite familiar with the dangers of the job of an offshore driller and, at the same time, prescribe Ultram."[13] In his opposition brief, the plaintiff argues "it is clear what is going on is an undue influence by a company safety representative upon a company doctor to try to prevent a severe injury from being classified as a lost time accident.  Part and parcel of that is withholding the pain medication."[14]

Plaintiff filed the instant lawsuit on September 2, 2010 against the Basic Energy entities,

---

[11] *Id.* at p. 63.

[12] *Id.* at. p. 88.

[13] *See* plaintiff's opposition brief, Doc. 32, at p. 3.

[14] *Id.* at pp. 4-5.

alleging he sustained personal and psychological injuries as a result of the negligence of Basic Energy and its employees, and/or unseaworthiness of the drilling barge, rendering Basic Energy liable under the Jones Act and the general maritime law. Plaintiff, also, argues "[d]efendants are presumed negligent by violation of the statutory duties imposed by federal and/or Louisiana law for ownership, use, maintenance and/or operation of its vessels and/or fleet of vessels."

With respect to the specific claims addressed in the instant motion for partial summary judgment, the plaintiff alleges:

12.

Your Complainant brings further action against Basic Marine for breach of its obligation under the general maritime law to afford Complainant with cure in the following, non-exclusive particulars:

a)      Willful, wanton and arbitrary failure to afford Complainant with medication prescribed by his treating physician for treatment of injuries caused as a result of the aforesaid accident while Complainant was in the service of RIG 15;

b)      Willful, wanton and arbitrary interference and influence of health care providers affording medical treatment to your Complainant[]; and/or,

c)      Willful, wanton and arbitrary engagement in the unlicensed practice of medicine by proscribing medical treatment regimens recommended to Complainant by licensed health care providers.

13.

As a result of the aforedescribed incident, injuries and damages, defendants are liable to Broady L. Manuel jointly, severally and *in solido* for past, present and future medical expenses, loss of earnings, loss of earning capacity, benefits, loss of enjoyment of life, mental anguish, disability, disfigurement, mental and physical pain and suffering, and psychological injuries, and any and all other items of damage, which may be proven at trial on the merits, in an amount not less than $5,000,000.00, in addition to compensatory and punitive damages and attorneys fees in an amount not less than $1,000,000.00 as a result of defendants' willful, wanton and arbitrary

condition in connection with their failure to provide Complainant with cure.[15]

On November 23, 2011, defendants filed the instant motion for partial summary judgment, seeking dismissal of "any and all claims for punitive damages, compensatory damages, and attorneys' fees being asserted by the plaintiff herein in connection with the handling of the plaintiff's cure and/or medical treatment by the employer." For the following reasons, the defendant's motion is DENIED.

## II.    Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v.*

---

[15] *See* Plaintiff's Complaint, Doc. 1, ¶¶12 & 13.

-7-

*Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore*, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990), *quoting Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986)).  The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990) (internal quotations and citations omitted).  The Fifth Circuit has further

elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the

> necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.   Law and Analysis

In the instant motion, defendants seek dismissal of "any and all claims for punitive damages, compensatory damages, and attorneys' fees being asserted by the plaintiff herein in connection with the handling of the plaintiff's cure and/or medical treatment by the employer."

The law of maintenance and cure was set forth succinctly by the district court in *Barclary v. Cameron Charter Boats*, 2011 WL 3468380 (W.D. La. August 8, 2011) (J. Minaldi), in which the court cited established Fifth Circuit and Supreme Court jurisprudence:

> Until an injured seaman reaches the point of maximum medical cure, he is entitled to maintenance and cure benefits for injuries incurred in the course of his employment. *Vaughan v. Atkinson,* 369 U.S. 527 (1962). A seaman reaches maximum medical cure when it is probable that further treatment will result in no betterment of the seaman's condition. *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.3d 89, 95 (5th Cir.1985). "It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure." *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 388 (5th Cir.1985) (citing *Hubbard v. Faros Fisheries, Inc.,* 626 F.3d 196, 202 (1st Cir.1980)). Ambiguities or doubts

with respect to the entitlement to maintenance and cure are resolved in the seaman's favor. *Cooper v.. Diamond M Co.,* 799 F.2d 176, 179 (5th Cir.1976).

When an employer receives a claim for maintenance and cure, it is entitled to investigate and require corroboration of the claim before making payments. If the shipowner rejects the claim after investigation, the shipowner is liable for punitive damages only if the plaintiff proves that the denial exhibits a "willful and wanton disregard of the maintenance and cure obligation." *Atl. Sounding Co., Inc. v. Townsend,* 129 S.Ct. 2561, 2575 (2009). "[T]he willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." *Harper v. Zapata Offshore Co.,* 741 F.2d 87, 90 (5th Cir.1984).

In *Atlantic Sounding Co. Inc. v. Townsend,* 129 S.Ct. 2561, 2575 (2009), the Supreme Court confirmed punitive damages for the willful and wanton disregard of the maintenance and cure obligation remain available to a seaman in the appropriate case as a matter of general maritime law.[16] To prove an employer's conduct was arbitrary and capricious, a seaman must do more than prove the employer's conduct was unreasonable. *Manderson v. Chet Morrison Contractors, Inc.,* 2012 WL 10541, 9 (5th Cir. 2012).  Rather, it is only when the employer "has exhibited callousness and indifference to the seaman's plight" that it becomes liable for attorney's fees. *Id.*  The Fifth Circuit has described this "higher degree of fault" as "egregiously at fault," "recalcitrant," "willful," and "persistent." *Id.*  Circumstances where courts have deemed conduct "arbitrary and capricious, or willful, callous and persistent" include a shipowner failing to investigate or conducting too lax of an investigation, withholding payments even after learning that such payments are due, ceasing payments in response to a seaman's retention of counsel or a seaman's refusal to accept a settlement

---

[16] Maintenance is "the right of a seaman to food and lodging if he falls ill or becomes injured while in service of the ship" and cure provides a seaman "the right to necessary medical services." *Guerva v. Maritime Overseas Corp.,* 59 F.3d 1496, 1499 (5th Cir.1995).An employer is obligated to pay a seaman's medical expenses even when the seaman selects his own physician unless the employer shows that the treatment was either excessive or unnecessary.  Joseph v. Omega Protein, Inc., 2008 WL 4938504, 5 (E.D.La. 2008) (J. Africk), *citing Caulfield v. AC & D Marine, Inc.,* 633 F.2d 1129, 1135 (5th Cir.1981); *In re The Matter of Cooper/T. Smith Stevedoring Co.,* 942 F.Supp. 267, 269-70 (E.D. La. 1996) (J. Fallon).

offer, and failing to reinstate payments after a new diagnosis. *Johnson v. American Interstate Ins. Co.*, 2010 WL 3802451 (W.D. La. September 20, 2012 2010) (J. Doherty), *citing Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985).

In the instant case, the plaintiff essentially argues the defendants are liable for compensatory and punitive damages for their "influence" over the company doctor in both attempting to have the doctor not prescribe prescription pain medication and, subsequently, in withholding such medication. The plaintiff argues the foregoing conduct "is the type of willful and wanton conduct in connection with the duty of a Jones Act employer to afford a seaman with cure that is sufficient to support a punitive damage claim for such conduct." However, the record shows the doctor did, notwithstanding any alleged efforts to influence him to the contrary, provide treatment, which itself is not argued to have been so inadequate, lacking or problematic as to have been a violation of the company's obligation to provide cure to the seaman. Additionally, it is unclear whether the company's obligation to provide cure, extends to or creates a duty to actually obtain prescribed medication for a seaman otherwise capable of obtaining the medication himself – separate from the obligation to pay for such medication. This, albeit unique, legal nuance has not been addressed by the parties and is not one without legal consequence – furthermore, there is a clear factual dispute as to what occurred between and among the doctor, company representative, and plaintiff, and as to the prescribed pain medication. The plaintiff acknowledges the defendants took the plaintiff to a doctor to obtain medical care and paid for that medical care.[17] Thus, this is not a case where plaintiff was actually denied medical *treatment*. Rather, the plaintiff argues that *after medical treatment was*

---

[17] Additionally, the defendants assert – and the plaintiff does not refute – weekly maintenance was paid at the longshore rate of $668.56 rather than the approximate $245.00 per week to which plaintiff would have been entitled because the claim was originally treated as a longshore claim by the insurance carrier.

*provided and paid for by the company*, a representative of the defendant companies, again, independently attempted to interfere with the ordered treatment by obtaining the prescribed medication for plaintiff and intentionally withholding certain medications that were prescribed.

The fact that both Dr. Davis and Mr. Leblanc deny the foregoing might, at first blush, create a factual dispute that would preclude summary judgment. However, in this case, neither party has addressed under what law such a unique factual clam would lie, and neither has cited this Court to any jurisprudence showing courts have treated a claim like the one alleged by the plaintiff as a violation of the duty owed under the Jones Act, a duty owed under state law, or the duty to provide cure. Depending upon which law provides the cause and right of action, and the remedy sought, the question of punitive damages differs, and the question of whether there exists a genuine issue of material fact as to the applicable law differs. Indeed, the defendants argue they could find no jurisprudence supporting an award for compensatory or punitive damages under a similar factual scenario, and the plaintiff identified no such cases in his brief, as well.

Considering the lack of clarity as to what law could or should apply to this unique factual scenario – this Court cannot determine whether the defendants are entitled to the relief requested in their motion and finds defendants have failed to carry their burden.

Considering the foregoing,

IT IS ORDERED that the Motion for Partial Summary Judgment [Doc. 21] filed by defendants Basic Marine Services, Inc. and Basic Energy Services, L.P. is DENIED.

It is clear to this Court this matter is not in a proper posture for trial as scheduled on March 5, 2012. Counsel shall contact this Court within ten days of the date of this Ruling for the purpose

-12-

of scheduling a telephone status conference to discuss the status of the case, the legal issues raised by this ruling, and to reset the matter for trial.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 27 day of January, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-13-